IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRIAN GILES, | ) | Case No. 4:17-cv-03050 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AFFIDAVIT OF** |
| | ) | **KELLY K. BRANDON** |
| | ) | |
| THE CITY OF LINCOLN, a political subdivision, | ) | |
| TOM CASADY, TIM LINKE, ERIC JONES, | ) | |
| and PATRICK BORER, in their individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| COUNTY OF SARPY | ) |
| | ) SS. |
| STATE OF NEBRASKA | ) |

I, Kelly Brandon, being duly sworn upon my oath, being an adult and based upon personal knowledge, depose and state as follows:

1. I am employed at the law firm of Fiedler & Timmer, P.L.L.C. and am one of the attorneys representing the Plaintiff, Brian Giles, in the above-captioned matter.

2. Attached hereto and marked as Exhibit "A", is a true and accurate copy of the position statement submitted to the Nebraska Equal Opportunity Commission on or about August 19, 2016, by the Defendant the City of Lincoln (hereinafter "the City'). Plaintiff's counsel subpoenaed the Nebraska Equal Opportunity Commission file on or about August 31, 2017.

3. Attached hereto and marked as Exhibit "B" is a true and accurate copy of the Amended Complaint in *Hurd v. City of Lincoln,* Case No. 4:16-cv-03029, which is currently pending before the United States District Court for the District of Nebraska. In addition to multiple other claims of adverse treatment, Hurd is alleging failure to promote claim for the same to Battalion Chiefs' positions that are the subject of the instant matter.

4. Attached hereto and marked as Exhibit "C" is a true and accurate copy of the position statement submitted to the Nebraska Equal Opportunity Commission on or about November 18, 2015 in the Troy Hurd case. Plaintiff's counsel subpoenaed the

1

# EXHIBIT 8

Nebraska Equal Opportunity Commission file on or about July 12, 2016 in the *Hurd* matter.

5. Attached hereto and marked as Exhibit "D" is a true and accurate copy of Defendants' Initial Disclosures served on or about July 31, 2017.

6. Attached hereto and marked as Exhibit "E" is email correspondence from August to September, 2017 between myself and defense counsel regarding electronic discovery. The parties discussed various custodians and had both proposed as custodians many of the same LFR command staff/HR representatives/EEO investigator that Plaintiff is proposing in this matter as custodians presently.

7. During the parties' initial discussions regarding electronic discovery, Plaintiff's counsel also informed Defendants' counsel that when formulating discovery requests in this matter, she was trying to narrow the electronic discovery requests pursuant to the recommendations of Judge Zwart regarding ESI production in the Hurd matter and in line with the discussions had regarding ESI to date.

8. In the Hurd case, the parties spent a considerable amount of time working through ESI issues; the number of custodians, etc. and ultimately decided upon the search of 14 custodians, which include the same command staff/management custodians proposed by the Plaintiff in this case, with the exception of Mayor Beutler[1], and a separate search for the email of Kimberly Taylor-Riley, who performed the investigation into Hurd's complaints and who also performed an investigation regarding Amanda Benson's complaints, whose discriminatory treatment Brian complained about in the instant matter.

9. Attached hereto and marked as Exhibit "F" is a copy of email correspondence for an initial search run for the name search variation in the Hurd case city-wide, the same search that Plaintiff is requesting in the instant matter for only 14 custodians.

10. Attached hereto and marked as Exhibit "G" is a copy of the spreadsheet for the initial search run by the City of Lincoln Information Services Department in the Hurd case for 83 custodians for name search variation, the same type of search that the Plaintiff is requesting in the instant matter for only 14 custodians.

11. Attached hereto and marked as Exhibit "H" is a copy of a chart of the initial phases of searching prepared by the City of Lincoln and submitted to Judge Zwart in connection with a discovery planning conference held on June 6, 2017 in the Hurd matter. These searches were all performed by Information Services that included not only name search variation search, but an additional 26 term searches for 13 LFR

---

[1] The Discovery requests indicate the Mayor's office, but Plaintiff clarified later that the City could speak to the Mayor's office to determine whether they communicated at all about Brian Giles, his complaints/the investigation regarding Amanda Benson; who might the principal contact been from the Mayor's office; and if the Mayor's office wasn't involved, we would remove Mayor Beutler as a custodian.

management custodians. Plaintiff is proposing a similar term search for the 14 LFR custodians with only 9 search terms.

12. Attached hereto and marked as Exhibit "I" is a copy of an email sent by Ms. Golden on June 6, 2017 indicating the approximate amount of expense that the City of Lincoln had incurred by the work performed by the City's Information Services division in the Hurd matter for the City-wide search; Phase 1 through Phase 3, along with the search of the investigative emails from a two-year investigation by Kimberly Taylor-Riley. The expense asserted for all of those searches run by Information Services was $10,040. Defendants have asserted expense of $5,289 for essentially Phase One in the Hurd case where there were 83 custodians as compared to the three custodians they have harvested in this case. The amount of expense seems greatly exaggerated given the searches performed in Hurd as compared to what has been done in the instant matter.

13. Given the parties initial discussions regarding the custodians in this matter, Plaintiff specifically named several of the custodians that the Defendant had suggested as having relevant knowledge regarding the promotions at issue within his written discovery requests.

14. On December 14, 2017 Plaintiff served his original Requests for Production of Documents and Interrogatories on the City, Defendant Tom Casady (hereinafter "Casady"), Defendant Tim Linke (hereinafter "Linke"), Defendant Eric Jones (hereinafter "Jones"), and Defendant Patrick Borer (hereinafter "Borer"). The requests listed the fifteen (15) LFR custodians and Kimberly Taylor-Riley; date restrictions and covered the key issues in this case – the promotions; Brian's complaints; the Amanda Benson investigation.

15. On or about January 19, 2018, Defendant the City of Lincoln replied to Plaintiff's discovery requests. The City objected to all of Plaintiff's ESI requests or requests related to the Benson investigation and produced no ESI. Attached hereto and marked as Exhibit "J" are the Defendant's Responses to Plaintiff's discovery requests that Plaintiff served on December 14, 2017.

16. Attached hereto and marked as Exhibit "K" is the meet and confer letter Plaintiff's counsel sent to Defendants' counsel on January 26, 2018, regarding the discovery disputes.

17. On January 29, 2018, Plaintiff's counsel and Defendant's counsel discussed the discovery disputes via telephone. It became clear that the Defendants had vastly changed their position from the parties' previous discussions regarding custodians and ESI back in October. The City representatives were no longer willing to even search any other Defendant's/City of Lincoln management representative custodians' email, with the exception of Tim Linke. Defendants' counsel requested that Plaintiff provide search terms. Plaintiff complied. Those search terms were rejected, and Defendants did not propose any search terms. The Defendants did concede that they would search

Eric Jones' and Brian Giles' email, but maintained their position that they would not search any other custodians' emails, even the other named Defendants. These conversations took place between January 31, 2018 and February 8, 2018, where the parties attempted to resolve their discovery disputes. The parties were unable to come to an agreement.

18. On February 8, 2018, Plaintiffs served Plaintiff's Interrogatories and Requests for Production to Defendant City of Lincoln (Second Set). Even though the original discovery requests were very tailored regarding ESI, Plaintiff attempted to further narrow the scope for the ESI. Plaintiff removed Chief Despain, the current Fire Chief, as a custodian and proposed search terms as requested by Defendants.

19. Following the ESI conference that the parties had with Judge Bazis on February 28, 2018, Plaintiff contacted Ms. Golden and requested a time to discuss the ESI issue and also requested additional information regarding what searches had been performed to date regarding the custodian's email and Defendant's position on the expense. Plaintiff's counsel was confused by the email numbers that the Defendants were representing to the Court for just Linke and Jones, given the productions that had occurred in the Hurd case. What Plaintiff's counsel was misunderstanding is that the Defendants hadn't even had their own Information Services Department run the appropriate searches. Plaintiff clarified with defense counsel that the City had not requested a search of emails from their Information Services Department other than for the total number of emails for Brian Giles, Eric Jones, and Tim Linke. Defense counsel was then attempting to perform "in-house" searches of those three custodians' emails with search terms rather than relying upon the technical expertise of the Information Services Department. Those "in-house" searches were where the attorneys were getting the large numbers they were representing to the Court. Additionally, those alleged numbers were not de-duplicated either, another function that the Information Services Division performs.

20. After learning this information, Plaintiff requested that Defendants have the Information Services Department perform a name variation search of the 14 custodians' management/decisionmaker's Plaintiff proposed to the Court to determine the number of emails to get a much more accurate idea of initial scope, similar to what was done in Hurd city-wide. Defendants declined that request citing expense.

21. Plaintiff's counsel does not understand Defendant's argument regarding expense. The same name search variation was performed in Hurd city-wide for **2000 employees**; and then for **83 custodians** in the Hurd case with ease. The search produced an easily readable chart for the various custodians. During the Hurd case, various searches were performed by Information Services. Searches were also performed regarding these same LFR representative custodians proposed by Plaintiff (with the exception of Mayor Beutler) with for various search terms. (See Exhibit "G") The number of emails that were retrieved for the global search City-wide and the first three phases were too large to use as a subset for the LFR non-investigative searches.

In consultation with Judge Zwart, the parties agreed as an initial search to produce emails from 13 key command staff/management custodians with the Hurd name variation and then a separate email search for Kimberly Taylor-Riley, the City's EEO investigator – a search very similar to what is being proposed by Plaintiff's counsel in the instant matter. This Hurd search for non-investigative emails, however, was over a nearly six-year time period and produced approximately 15,000 pages of emails. The Kimberly Taylor-Riley search was for a period of 26 months and produced approximately 5,000 pages of emails. Plaintiff is proposing essentially the same search for this case, but for a two-and-a-half-year time for the key custodian/non-investigative emails and a significantly shorter time period, eight months, for ESI from Kimberly Taylor-Riley and LFR personnel for their investigations.

22. The ESI obtained in the Hurd case was critical in proving several elements of Plaintiff's case, including motive of the decision-makers; opinions held by decision-makers regarding Troy Hurd; command staff's conversations regarding the adverse actions at issue and the investigations that were performed regarding Hurd's initial complaints regarding Sara Khalil and the Kimberly Taylor-Riley investigation. That Hurd ESI, along with the Kimberly Taylor-Riley investigative file, is providing the bulk of the evidence being formulated to respond to a motion for summary judgment in that case that is presently due on March 28, 2018. Many of the emails that were obtained occurred *after* the adverse actions occurred, as command staff continued to discuss the incidents in conjunction with Hurd's internal investigation and his NEOC Charge. Similarly, in this case Brian Giles complained to Jones regarding the unfairness of the promotions process and also filed an NEOC Charge in June of 2016.

23. Attached hereto and marked as Exhibit "L" are Defendant's Responses to Plaintiff's supplemental discovery requests that were served on or about March 12, 2018, Defendants objected to all these discovery requests based on similar objections to Plaintiff's Initial Requests for ESI. Defendants also refused to produce cell phone billing records for the city-issued cell phones for LFR command staff from April, 2015 to August, 2015 or the LFR investigative file.

24. On or about March 16, 2018, Defendants filed a Motion for the Court to Set New Progression Order Allowing for Phased Discovery and Initial Motion to Dismiss and Summary Judgment Deadlines. Defendants assert that they should be entitled to staged discovery that would entitle them to file an early Motion for Summary Judgment by limiting the custodians to Linke, Jones, and Giles. I believe Defendant is attempting to block Plaintiff from obtaining relevant, discoverable ESI regarding this case from the main decisionmakers and investigator. All of the custodians proposed by Plaintiff are listed in Defendants' Initial Disclosures as having relevant and discoverable information, with the exception of Jeanne Pashalek and Mayor Beutler.

25. Attached hereto and marked as Exhibit "M" is Plaintiff's proposal for an initial ESI search and custodian list. While the custodians are very similar and in line with Judge Zwart's previous advice on numbers of custodians, this search is far less intrusive than the ESI search performed in Hurd, with fewer search terms, and a much more limited timeframe. The timeframe in Hurd for the non-investigative email was from January, 2011 to October, 2016 as opposed to the instant matter where Plaintiff has proposed September, 2014 to April, 2017 for the non-investigative emails from City representatives. The timeframe in Hurd for the investigative emails was over two years, from August, 2012 to October, 2014. The timeframe requested for the investigative emails from Taylor-Riley and two LFR custodians is from December, 2015 to July, 2016.

26. What is being proposed by the Plaintiff presently is very similar to what the Defendant was initially proposing in this case in October of 2017. Plaintiff formulated his discovery requests in line with those discussions.

27. Attached as Exhibit "N" is a true and accurate copy of LFR Chiefs Meeting minutes produced in discovery herein by the City as Bates-stamp numbers CITY-BG-00006118 – CITY-BG-00006120.

28. Attached as Exhibit "O" is a true and accurate copy of a chart outlining the representations made by the City at various points in time as to who was consulted from command staff for the Battalion Chiefs' promotions in 2015.

29. Attached as Exhibit "P" are true and accurate copies of notes from the Kimberly Taylor-Riley investigation in the Hurd matter regarding a conversation with Kendall Warnock produced as bate-stamp numbers 12398-12400.

30. Attached as Exhibit "Q" are true and accurate copies of an Affidavit submitted by Jeanne Pashalek in the Hurd v. City of Lincoln case.

I declare under penalties of perjury that the foregoing is true and correct.

Signed this 21st day of March, 2018.

_____
Kelly K. Brandon

Subscribed and sworn to before me this 21st day of March, 2018.

_____
Notary Public

(Seal)
State of Nebraska – General Notary
TRACY J. MCKIBBEN
My Commission Expires
October 28, 2021