IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIAN GILES,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LINCOLN, et. al;<br><br>Defendants. | 4:17CV3050<br><br>MEMORANDUM AND ORDER |

The following motions are currently pending before me and fully submitted:

Filing No. 45:   Defendants' Motion for New Progression Order Allowing for Phased Discovery and Initial Motion to Dismiss and Summary Judgment Deadlines;

Filing No. 48:   Plaintiff's Motion to Compel; and

Filing No. 65:   Plaintiff's Motion to Amend.

For the reasons stated below, Defendants' motion will be granted, and Plaintiff's motion to compel and motion to amend will be denied.

## INTRODUCTION

Rule 1 of the Federal Rules of Civil Procedure sets the overarching standard applicable to all federal civil cases.

> [The Federal Rules of Civil Procedure] govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court <u>and the parties</u> to secure the just, speedy, and inexpensive determination of every action and proceeding.

Fed. R. Civ. P. 1 (emphasis added). Plaintiff's counsel argues that the December 2015 rule changes did not actually change the scope of discovery; that a

proportionality requirement was always imbedded within the Rules. She is correct, but it was not previously emphasized nor consistently enforced by the courts. More importantly, a past tendency to ignore or overlook proportionality when considering discovery disputes does not justify continuing that culture.

The magistrate judges within the District of Nebraska are working cooperatively with each other and the bar to assure that the aspirations of Rule 1, and the associated 2015 amendments to the civil rules, are fully implemented. The court must actively engage to address broad electronically stored information (ESI) discovery requests that eclipse the merits of the case; where litigating and completing ESI discovery exceeds the value of the entire lawsuit and as such, becomes an impetus to settle irrespective of the merits. Such circumstances are the antithesis of the purpose of Rule 1. They cannot be supported or condoned by the court.

Against this backdrop, this court is now tasked with sifting through over 1500 pages of documentation on the pending motions; with Plaintiff alone submitting 142 pages of briefing and over 1100 pages of evidence. Ironically, Plaintiff filed a 76-page brief and over 800 pages of evidence in support of an order compelling discovery of ESI "proportional" to the needs of the case.[1] As stated by Defendants, Plaintiff's extensive filings are "the most persuasive evidence of the necessity to control discovery in this case." (Filing No. 55 at CM/ECF p. 1). The City argues

---

[1] The court has not considered exhibits that were not cited in a brief, (see, Filing Nos. 74-2, 74-3, and 74-4), or multi-page exhibits that were cited in a brief with no citation to the exhibit page supporting the argument. See NECivR 7.1(a)(2)(A). See, e.g., Filing No. 49, at CM/ECF pp. 25-27, ¶¶ 66, 67, 68, 69, & 71. Moreover, some exhibits contain information that is either duplicative or inadmissible as irrelevant, hearsay, or both. The court considered only admissible evidence, and only to the extent it bore on the discovery and case progression issues raised by the parties' motions.

staging discovery is a first step in that process. As explained below, the court agrees.

PLAINTIFF'S LAWSUIT

Plaintiff's complaint alleges Plaintiff was retaliated against "for reporting sexual and national origin harassment/discrimination; for reporting retaliation regarding other firefighters who had engaged in protected activity; and for participating as a witness in connection with EEO investigations conducted by the City of Lincoln." ([Filing No. 1 at CM/ECF p. 1](#)). Plaintiff alleges that after he supported claims made by female firefighters, and a claim by Troy Hurd that Hurd was retaliated against for supporting female firefighters, Plaintiff himself became the target and victim of retaliation. Specifically, Plaintiff claims that in September of 2014, he applied to be placed on a promotions list for Battalion Chief. He alleges that two such openings occurred in the Spring of 2015, and despite his superior ranking, experience, and qualifications within the applicant pool, the promotions were awarded to two other individuals; one on August 13, 2015 and the other on November 30, 2015. Plaintiff alleges he was not promoted in retaliation for supporting those subjected to discriminatory treatment. He asserts claims against the City of Lincoln, Nebraska, Tom Casady, Tim Linke, Patrick Borer, and Eric Jones for recovery under [42 U.S.C § 1983](#) for violation of rights secured under the Equal Protection Clause and the First Amendment; Conspiracy under [42 U.S.C. § 1985](#), Title VII of the Civil Rights Act of 1964, as amended, and parallel Nebraska employment law. ([Filing No. 1](#)).

Linke, as Interim Chief of Lincoln Fire and Rescue Department (LF&R), made the Battalion Chief hiring decisions. ([Filing No. 54-5, at CM/ECF p. 2-3](#)). Linke was appointed as Interim Chief in June of 2015. Id. Before making the Battalion Chief promotion decisions, Linke received information from the chief

officers or command staff of LF&R. While there appears to be a factual issue as to precisely who Linke spoke to before making the decisions, ([Filing No. 54-5, at CM/ECF p. 2](#); [54-2](#), [54-3](#), [54-4](#), [54-6](#), and [54-7](#)), it is undisputed that Linke chose someone other than Plaintiff for the August position, and Plaintiff withdrew his name from consideration for the November opening. (Filing Nos. [53-1, at CM/ECF p. 5](#); [54-5, at CM/ECF pp. 2-3](#): [55 at CM/ECF p. 23](#)).

ANALYSIS

A.   Motion to Stage Discovery/ Motion to Compel

To succeed on any of his alleged claims, Plaintiff must prove he suffered a materially adverse employment action (an "injury" under [42 U.S.C. § 1985](#)) because he engaged in protected activity. [Wright v. St. Vincent Health Sys., 730 F.3d 732, 737 (8th Cir. 2013)](#) (holding the elements of Title VII and § 1981 retaliation claims are identical); [Harrell v. Robinson, 703 Fed. Appx. 440 (8th Cir. 2013)](#) (retaliatory discrimination claims under 18 U.S.C. § 1983 and Title VII are evaluated under the same standard); [Al–Zubaidy v. TEK Industries, Inc., 406 F.3d 1030, 1039–40 (8th Cir. 2005)](#) (failure of claims under Title VII dooms similar claims under NFEPA); [Bonenberger v. St. Louis Metro. Police Dept., 810 F.3d 1103, 1109 (8th Cir. 2016)](#) (Plaintiff must prove an overt act in violation of § 1985 "injured" him). Plaintiff must prove a causal link between the City's decision to not promote Plaintiff to Battalion Chief and Plaintiff's participation in the Hurd investigation and/or his alleged complaints of discrimination against Benson.

To that end, Plaintiff has requested extensive ESI collected using 42 terms to search the files of 17 custodians, plus 7 aides in the Mayor's Office. ([Filing No. 54-16](#)). The requests demand production of all communications regarding the selections and promotions to Battalion Chief and Linke's communications with the

4

applicants; Amanda Benson's complaints about treatment she received from LF&R and the investigation of those complaints; Plaintiff's complaints regarding the treatment of Benson; and all cellular text messages and billing records of incoming and outgoing calls. For some of these requests, Plaintiff demands records to the present—far beyond the 2015 promotion decisions at issue. ([Filing No. 54-16](#)).

Contrary to Plaintiff's argument, Defendant has made a sufficient showing of the substantial burden of responding to Plaintiff's extensive discovery. As stated by defense counsel and supported by the evidence of record:

> For Request for Production No. 36, a search of the time frame of October 2014 through November 2015 with Giles' proposed search terms resulted in 15,697 emails for Tim Linke and 8,086 emails for Eric Jones, for a total of 23,783 for just 2 custodians out of the 12 requested. . . . For Request for Production No. 37, a search of the time frame of October 2014 through June 2016 with Giles' proposed search terms resulted in 15,211 emails for Tim Linke and 6,727 emails for Eric Jones, for a total of 21,938 for the same two custodians, which only spans 33 of the 42 months actually requested by Plaintiff's counsel. . . . By extrapolation, doing a search [of] so many months for the 12 custodians would likely result in a number exceeding 100,000 emails for these two Requests for Production.

[Filing No. 47, at CM/ECF p. 3](#) (citing [Filing No. 46-1, at CM/ECF p. 2](#) (affidavit of Golden). And locating and collecting the ESI is merely the initial step in the process. The City must then engage IT services for de-duplication, and once that is complete, defense counsel must review the information to determine which documents are responsive to Plaintiff's discovery requests and whether the information is protected from disclosure as work product or privileged.

In support of his claim that the requested discovery is proportional to the value of the claims, Plaintiff, who is now 52 years old, claims he lost over three million dollars in wages, benefits, and lost earning capacity because he was not promoted to Battalion Chief in 2015. ([Filing No. 53-5](#), [53-6](#), [53-7](#)). Perhaps, but in

terms discussing the benefits of staged discovery and under the facts presented, that argument cuts in favor of the defendants. The battle over damages will be significant: While Plaintiff's expert states Plaintiff's damages, not including general compensatory damages, exceeds three million dollars, the defendants counter that Plaintiff remains employed by LF&R and the person selected as Battalion Chief in August of 2015 made less than Plaintiff in 2016. ([Filing No. 46-1, at CM/ECF pp. 3](#), [13-14](#)). As to the November 2015 promotion, Plaintiff withdrew from consideration after investigating the pay and benefits. ([Filing No. 46-1, at CM/ECF pp. 11-12](#); [53-1, at CM/ECF p. 8](#); [54-6, at CM/ECF p. 2](#)). See, e.g.,

> **From:** Brian S. Giles
> **Sent:** Monday, December 21, 2015 9:36 AM
> **To:** Timothy K. Linke; Jim A. Bopp
> **Cc:** LFR Staffing
> **Subject:** Battalion Chief Out-of-Grade
>
> Gentlemen -
>
> Please remove my name from the promotional list for BC, as I have no interest in riding out of grade at this time.
>
> Thanks -
>
> Brian

[Filing No. 46-1, at CM/ECF p 12](#). Under the facts presented, Plaintiff's projection of lost income will not be accepted without a fight, and that fight will not be cheap. But it will be unnecessary if Plaintiff cannot first prove an injury or materially adverse employment action caused by Defendants' alleged retaliatory conduct.

Having fully considered the issue, the court finds the proper and proportional course is staged discovery, with the first phase focused on whether a causal link exists between Plaintiff's alleged protected activity and the alleged adverse employment actions or injuries. At this first stage, the discovery will be limited as follows:

1) Plaintiff's depositions of witnesses other than Linke will be limited to (a) what those witnesses knew, if anything, about Plaintiff's alleged protected activity prior to December 1, 2015, and (b) if prior to December 1, 2015, they communicated with Linke regarding his selections for promotion to Battalion Chief, and if so, what they said.

2) As to telephone records, Plaintiff may subpoena the Verizon records of incoming and outgoing calls and text messages for the cell phones used by Jones and Linke for the 2015 calendar year.

3) As to (ESI), Plaintiff is entitled to:

- All emails to or from Giles from October 2014, when Benson transferred to Station 8, and December 31, 2015.

- The emails of Linke and Jones between October 2014 and December 31, 2015 that contain the key words "Giles" and/or "Brian Giles", and/or "Promotion" and/or "Promotional" and/or "Benson," and/or "Battalion Chief."

4) Plaintiff is not entitled to Defendants' EEO investigatory file for Amanda Benson's complaint, such complaint and associated investigation having occurred after both Battalion Chief promotions were made.

Plaintiff's counsel argues that under a "cat's paw" theory, the foregoing limitations will prejudice her client; that the emails of everyone Linke may have communicated with before announcing the Battalion Chief promotions are relevant to this case. ([Filing No. 49, at CM/ECF p. 41](#)). However, even under a "cat's paw" theory, Linke is the focus—if he did not receive the communication, it could not have influenced his decision much less rendered him a "conduit, vehicle, or rubber stamp" through which other LF&R employees achieved their discriminatory purpose. [Richard v. Sugg, 488 F.3d 1046, 1060 (8th Cir. 2006)](#). And if Linke did receive the emailed communication, it will be within the emails he produces as

permitted under this order. These emails need not also be retrieved from the sender's files.[2]

Plaintiff appears to argue that I must allow extensive ESI discovery in this case because I permitted even more in 4:16-cv-03029-RGK-CRZ Hurd v. The City of Lincoln et al. (Filing No. 49, at CM/ECF p. 71-76; 52-5, 52-6). I reject that argument for at least three reasons: 1) the scope of discovery is determined on a case-by-case basis, and this case is not the Hurd case; 2) the City did not request, and the court did not consider, staged discovery in Hurd; and perhaps most importantly, 3) upon reflection, I am convinced I granted too much discovery latitude in Hurd, and if faced with the same discovery questions again, my answers would be different. In Hurd, before discovery was even complete, Plaintiff's counsel

---

[2] In her briefing, Plaintiff's counsel states "Defendants are obstructing the free flow of information in this case." (Filing No. 49, at CM/ECF p. 53). Their "argument for phased discovery is no more than a disguised attempt to be obstructive." (Filing No. 58, at CM/ECF p. 29). "Rather than present an accurate picture to the Court of the 'hits' that are out there for the custodians proposed, as counsel did previously in Hurd, defense counsel is attempting to present the 'hits' performed by a haphazard search" performed by a paralegal. (Filing No. 49, at CM/ECF p. 53). "Defendants might already know what [was] said about Brian Giles and [they] are fighting tooth and nail to prevent Plaintiff from discovering it." (Filing No. 58, at CM/ECF p. 37),

Citing Judge Mark Bennett in Security National v. Abbott Laboratories, 299 F.R.D. 595 (N.D. Iowa 2014), Plaintiff's counsel describes the conduct of Defendants and their counsel as examples of discovery obstructionism that is a common problem and a pervasive culture in civil litigation. But civil discovery has also bred a culture of accusing the opposing counsel and parties of being purposefully obstructive and misleading when, in fact, there are reasonable arguments supporting their objections or proposed discovery limitations. Based on the record before me, I find nothing to indicate that as to discovery in this case, the defendants or their counsel have purposely obstructed discovery, or that their actions or inactions have undermined the "secure the just, speedy, and inexpensive determination" of this lawsuit. Fed. R. Civ. P. 1. To the contrary, consistent with the federal rules, Defendants have proposed discovery options proportionate to the needs of this case.

stated she had incurred $100,000 of attorney's fees. I must act to curb, not repeat, the onerous discovery and case preparation obligations permitted in Hurd, particularly where, as here, Plaintiff's adverse employment action allegations are limited to two alleged failures to promote and Plaintiff withdrew from consideration as to one of those positions.

For the foregoing reasons, I find Defendants' motion for phased discovery should be granted, with a summary judgment deadline set to correspond with the deadline for completing discovery as permitted during this first phase. The parties will be required to advise the court as to anticipated deadlines for completing the initial stage of discovery and for filing a dispositive motion on whether a causal link exists between Plaintiff's alleged protected activity and the alleged adverse employment actions and/or Plaintiff's injury. Plaintiff's motion to compel will be denied, with initial discovery limited to the staged discovery process outlined in this order.

B.  Motion to Amend

Plaintiff has moved to amend his complaint, explaining the proposed amendments will not raise new theories of recovery. Rather, Plaintiff argues:

> Following the deadline for amending pleadings in this matter, Plaintiff's counsel discovered additional factual material during discovery in another matter also involving the City of Lincoln and LFR, that supports Plaintiff's claims. Furthermore, Judge Kopf has issued a ruling on the City's Motion for Summary Judgment in connection with the *Hurd v. City of Lincoln*, Case No. 4:16CV3029 (Filing No. 136) in which the Court held that retaliation claims under the Equal Protection Clause of the 14th Amendment are not actionable against the individual defendants based upon the doctrine of qualified immunity. In light of this new evidence and the Court's ruling, Plaintiff respectfully requests this Court [grant] leave to amend his Complaint to remove the retaliation claims based solely upon the 14th

9

> Amendment Equal Protection Clause as to the individual defendants and provide additional factual information to guide discovery/clarify his claims.

(Filing No. 66, at CM/ECF p. 1-2). Plaintiff argues "Plaintiff's Amended Complaint is meant to facilitate the progression of this matter and to be diligent in moving this case forward," with the proposed amended complaint adding "the same allegations that Plaintiff relied upon to support his Motion to Compel," the majority of which were obtained "during discovery in the Hurd matter after the deadline to amend had run in this matter." (Filing No. 73, at CM/ECF p. 1).

The deadline for filing a motion to amend was September 17, 2017. (Filing No. 13, at CM/ECF p. 2). Plaintiff's motion was filed on September 7, 2018. (Filing No. 65). Pursuant to Rule 16(b)(4), a case management order which sets case progression deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008); Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006).

The court has reviewed Plaintiff's proposed amendments and notes that several of the new paragraphs recite information Plaintiff knew before his initial complaint was filed. See Filing No. 65-1, ¶¶ 20, 34, 41-43, 45-47, 49, 54, 58-62, 70, 72, and 75. Plaintiff did not need discovery to raise these allegations from the outset. As to the remaining proposed factual changes and additions, Plaintiff has failed to show when he first discovered the information or that it could not have been known, through reasonable efforts, before September 17, 2017, the deadline

for moving to amend pleadings. Moreover, Plaintiff need not file an amended complaint to dismiss claims he no longer intends to pursue. He need only file a motion to dismiss those claims (likely unopposed), or he can choose not to list the claims in the final pretrial conference order.

Finally, the court notes that in Hurd, the stated source of additional information included within the proposed amended complaint, the written discovery deadline was September 30, 2017, and the key depositions were completed no later than November 3, 2017. (See [Filing No. 50-1](#) (Taylor-Riley; October 17, 2017); [50-2](#) (Huff; October 18, 2017); [50-3](#) (Bonin; October 19, 2017); [50-4](#) (Casady; October 19, 2017); [50-5](#) (Borer; October 25, 2017); [50-6](#) (Linke; November 3, 2017)). Plaintiff has not adequately explained why he waited over ten months thereafter to move to amend the complaint out of time.

Plaintiff has failed to show good cause for permitting an amendment of his Complaint out of time. His motion to amend will be denied.

Accordingly,

IT IS ORDERED:

1) Defendant's motion to phased discovery, ([Filing No. 45](#)), is granted, and on or before October 12, 2018, counsel shall file a joint motion with proposed deadlines for completing written and deposition discovery as permitted herein, and for filing a motion for summary judgment on whether a causal link exists between Plaintiff's alleged protected activity and the alleged adverse employment actions and/or §1985 injuries alleged.

2) Plaintiff's motion to compel, ([Filing No. 48](#)), is denied. Discovery is permitted only the extent allowed as initial phase discovery under this order.

3) Plaintiff's motion to amend, ([Filing No. 65](#)), is denied.

September 28, 2018.	BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge